## In re SULLY et al.

(District Court, S. D. New York. December 19, 1904.)

### No. 6,873.

1. BANKRUPTCY—RECEIVERS—COMPENSATION.

Where the receivers appointed for a bankrupt were men of integrity, ability, and extensive experience in large business affairs, one of them being a cotton merchant, familiar with the business of the Cotton Exchange, and the other a lawyer, and such receivers succeeded in collecting nearly $1,200,000 in assets, and realized $100,000 more for certain pledged cotton belonging to the bankrupt than it would have realized at any subsequent period, an allowance of $16,000 for their services by the referee should be increased to $21,000.

In Bankruptcy.

Boothby & Baldwin, for receivers.

George H. Culver, for Clayton E. Rich and others.

HOLT, District Judge. This is a motion to confirm a referee's report fixing the receivers' allowance. I do not intend ordinarily to interfere with the decisions of referees respecting allowances, except for weighty reasons. They have a personal knowledge of what has been done in a case, and can usually judge as well as, and, upon the whole, better than, I can what compensation should be allowed. But in this case the referee states in his opinion that he has been guided by certain decisions in which some judges have held that the object of Congress was to render the administration of estates in bankruptcy as cheap as it could possibly be made, and to reduce to the lowest minimum the expenses of administration. Such decisions have been made, and the referee properly considered it his duty to follow them, but I think that there is a tendency to construe them too strictly. The amounts paid for services in administering the bankrupt act should never be lavish or extravagant, and should always be rigidly scrutinized, but I know of no reason why they should not be reasonable and adequate. I think it unwise to establish a scale of compensation for services in administering bankrupt estates at so low a rate that the best class of lawyers will refuse to practice at the bankruptcy bar, and the best class of business men refuse to serve as trustees or receivers. In this case the bankrupts were cotton merchants and brokers. The estate is large. The receivers have collected and hold nearly $1,200,000 in assets. When called on to appoint the receivers I concluded to select a cotton merchant familiar with the business of the Cotton Exchange and a lawyer. I wanted men of the highest standing, who were not only men of integrity and ability, but of an extensive experience in large business affairs. I appointed such men. They have acted with ability and efficiency in all respects. Immediately

after their appointment they sold a large quantity of pledged cotton, obtaining prices by which the estate has realized about $100,000 more than it would have realized at any prices subsequently obtainable. In short, these receivers have discharged their trust, not only with integrity and ability, but with the sagacity of men thoroughly experienced in large business transactions. It is, in my opinion, very important that the court should be able at all times, in proper cases, to obtain the services of such men, and in order to obtain their services it is necessary that they should be paid a remuneration fixed on a scale similar to that ordinarily paid to men of similar standing for services of similar responsibility in this city. There is a heavy responsibility upon the court in appointing receivers of such large estates. The appointment of receivers of the highest character is the surest guaranty of the safety and the wise management of the assets. In this case the referee has recommended that the two receivers be paid $16,000. That is substantially 1⅓ per cent. on the assets in their hands. I think, in view of the amount involved, the responsibility undertaken, the work done, the business and professional standing of the respective receivers, and the general standard of compensation for such work by such men in the business community of New York, that the sum recommended is not enough. I do not consider the amount of $25,000, which the receivers themselves asked, as excessive, but I desire in such a matter to be conservative. I think that $21,000, which is substantially 1¾ per cent. of the amount in the receivers' hands, is a perfectly reasonable compensation.

The referee's report is modified by allowing the receivers $21,000 instead of $16,000, and is in all other respects confirmed.